# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

## No. 201600204

———————————————

## UNITED STATES OF AMERICA
Appellee

v.

## ANGEL M. MALDONADO-NEGRIN
Private First Class (E-2), U.S. Marine Corps
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Forrest W. Hoover, USMC.
Convening Authority: Commanding Officer, 2d Intelligence
Battalion, II Marine Expeditionary Force, Camp Lejeune, NC.
Staff Judge Advocate's Recommendation: Colonel Kevin S. Woodard,
USMC.
For Appellant: Major Jason L. Morris, USMCR.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC,
USN; Lieutenant Jetti L. Gibson, JAGC, USN.

———————————————

Decided 28 March 2017

———————————————

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

RUGH, Judge**:**

A military judge sitting as a special court-martial convicted the appellant, consistent with his pleas, of unauthorized absence, wrongful use of heroin, larceny, and dishonorably failing to pay just debts—violations of Articles 86, 112a, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912a, 921, and 934. The military judge sentenced the appellant to 12

months' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant now raises three assignments of error: (1) that the staff judge advocate's (SJA) recommendation was incorrect because if did not attach or summarize the pretrial agreement (PTA); (2) that trial defense counsel was ineffective; and (3) that the appellant's sentence was inappropriately severe.[1] We disagree, and, finding no error materially prejudicial to the appellant's substantial rights, we affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

By late summer 2015 the appellant was a heroin addict. To support this addiction, he borrowed over $2,600.00 from 9 other young Marines, deceiving them as to his reasons for borrowing the money, falsely promising to repay them on his next pay day, and purposefully evading them when time for repayment arrived. Additionally, he stole $800.00 from another Marine by exchanging cash for checks he knew to be worthless. During this same period, he embarked on two periods of unauthorized absence in order to acquire and use heroin.

## II. DISCUSSION

### A. SJA's recommendation (SJAR)

The appellant now asserts that the SJAR was deficient in that it did not attach or summarize the pretrial agreement between the appellant and the CA in violation of RULE FOR COURT-MARTIAL (R.C.M.) 1106(d)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), and that this error requires we remand this case for new post-trial processing. We disagree.

On 7 and 10 December 2015, the appellant and the CA signed, respectively, a PTA in which the appellant agreed to plead guilty to certain preferred charges in consideration for referral of those charges to a special, vice general, court-martial. As a result, the PTA capped the appellant's punitive exposure at the jurisdictional sentence limits of a special court-

---

[1] Although not raised as error, the appellant asserts, and the Government agrees, that the promulgating order incorrectly failed to comply with RULE FOR COURT-MARTIAL (R.C.M.) 1114(c) because it did not include a summary of Specification 1 of Charge III. Appellant's Brief of 12 Sep 2016 at 1, n.1; Government's Brief of 12 Dec 2016 at 10-11. However, we note that R.C.M. 1114(c) only requires the promulgating order set forth "the charges and specifications, or a summary thereof, on which the accused was arraigned." As Specification 1 of Charge III was withdrawn from the court-martial and dismissed prior to arraignment, Record at 4, no notation in the promulgating order is required. As a result, we decline the parties' invitation to summarize the specification in the supplemental order.

martial.[2] After announcing the sentence, the military judge reviewed the PTA with the appellant and confirmed that it had no effect on the sentence he awarded.

In the SJAR, completed on 16 May 2016, five months after the PTA was signed by the parties, the staff judge advocate wrote, "[t]he pretrial agreement has no effect on the sentence adjudged."[3]

"Failure of counsel for the accused to comment on any matter in the [SJAR] . . . in a timely manner shall [forfeit][4] later claim of error with regard to such matter in the absence of plain error." R.C.M. 1106(f)(6).[5] Plain error exists when "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Kho*, 54 M.J 63, 65 (C.A.A.F. 2000) (citations omitted). When assessing prejudice for post-trial error in an SJAR, courts only require that the appellant make "some colorable showing of possible prejudice." *United States v. Chatman*, 46 M.J. 321, 323-24 (C.A.A.F. 1997). Without deciding whether the phrase "[t]he pretrial agreement has no effect on the sentence adjudged" was sufficient to comply with R.C.M. 1106(d)(3), we find that the appellant has not met the low threshold for demonstrating prejudice, even if plain or obvious error existed.

In December 2015, the CA signed the PTA, agreeing to refer the charges to a special court-martial. One month later, the same CA referred the charges to a special court-martial in compliance with the PTA. Four months later, the CA received the SJAR, which referred to the PTA as having no effect; and, a copy of the Report of Results of Trial attached to the SJAR, which also indicated that there was a PTA and that it had no effect. The CA's involvement in the PTA, which was so long ingrained in the fabric of the case, precludes any impact on the appellant's substantial rights. As a result, we decline to remand for a new recommendation and action.

---

[2] Appellate Exhibit II at 1.

[3] SJAR of 16 May 2016 at 1.

[4] For clarity's sake, we substitute the text's original term "waive," for the more legally accurate term "forfeit," as was intended by the drafters, as evidenced by the use of the subsequent phrase "in the absence of plain error." *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make a timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (citations and internal quotation marks omitted).

[5] *See also United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000).

**B. Ineffective assistance of counsel**

The appellant alleges his counsel was ineffective for: (1) failing to introduce evidence or expert testimony on the origin of his addiction to heroin in sentencing; (2) failing to investigate or introduce favorable testimony from his victims in sentencing; (3) presenting a deficient argument on sentencing; and (4) submitting a deficient clemency request.

After findings, the government introduced seven exhibits, including a confessional stipulation of fact, a note from the appellant explaining his motive for his unauthorized absence, muster reports, a report of positive urinalysis, statements from nine of ten victims and several service record book documents, including previous disciplinary counseling records. Additionally, the government introduced testimony from one of the victims who lent the appellant over $1,500.00. Subsequently, the defense introduced three exhibits: a series of eight letters from members of the appellant's home community espousing his good moral character and opportunity for success post-military; several pictures of the appellant with his family, including his wife and infant daughter; and a lengthy letter from the appellant. The defense also introduced testimony from the appellant's mother, his wife, and his own unsworn statement. During this statement, the appellant emphasized his rehabilitative potential:

> Now that I am clean, I am confident that I will make the right decisions when [I] get released. I have also been attending [Alcoholics Anonymous/Narcotics Anonymous] meetings, and it has helped me stay focused on the challenges that will come when I am released from the brig. I plan to move back from Orlando, Florida, after I leave the Marine Corps. My wife and our beautiful one-year-old daughter are waiting there for me, and so is the rest of my family. I plan to improve my relationship with my wife and daughter, and seek spiritual guidance to have a better family.[6]

The rehabilitation refrain was repeated by his trial defense counsel during sentencing argument:

> [The appellant] is an addict. That doesn't excuse or provide any justification for what he did. But it does provide some sort of insight into what was going on in his world in the span of a few months. . . . He has now had the opportunity to [be] clean and sober in the brig. He's going to counseling. He's attending Narcotics Anonymous meetings; and he's meeting with a pastor at the brig. . . . He's got a family that's going to accept him and

---

[6] Record at 120.

be there to help him. He's got a wife and child that need him. The wife had said she will welcome him back . . . home. Sir, for these reasons we ask that you sentence [the appellant] to time served.[7]

On 27 May 2016, trial defense counsel submitted a post-trial request for clemency, identifying the time and resources saved by the appellant's guilty plea. It also highlighted the appellant's successful repayment of $4,100.00 in restitution to his victims, which was a requirement of his PTA. The trial defense counsel then requested that "any clemency available be granted by the convening authority."[8]

The Sixth Amendment right to effective assistance of counsel at courts-martial is a fundamental right of service members. *United States v. Knight*, 53 M.J. 340, 342 (C.A.A.F. 2000) (citing *United States v. Palenius*, 2 M.J. 86 (C.M.A. 1977)). Ineffective assistance of counsel involves a mixed question of law and fact. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). The ultimate determinations of whether defense counsel was deficient and whether the deficiency was prejudicial are reviewed *de novo*. *Id.*; *United States v. McClain*, 50 M.J. 483, 487 (C.A.A.F. 1999).

We apply the two-prong test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) to determine whether counsel rendered ineffective representation. "The burden on each prong rests with the appellant challenging his counsel's performance." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005).

The first prong requires the appellant to show that counsel's performance fell below an objective standard of reasonableness, indicating that counsel was not functioning as counsel within the meaning of the Sixth Amendment. *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation. *United States v. Cronic*, 466 U.S. 648, 658 (1984); *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004). This presumption is rebutted only when there exists a showing of specific errors made by defense counsel that are unreasonable under prevailing professional standards. *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005).[9]

---

[7] *Id*. at 125-26.

[8] Detailed Defense Counsel Request of 27 May 2016.

[9] *See also Strickland*, 466 U.S. at 688 (finding that the Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms").

"We do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citations and internal quotation marks omitted). "[S]trategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *Id.* at 371 (quoting *Strickland*, 466 U.S. at 690-91).

The second prong requires a showing of prejudice resulting from counsel's deficient performance. *Strickland*, 466 U.S. at 687. Such prejudice must result in the denial "of a fair trial, a trial whose result is unreliable." *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F. 2001) (citation and internal quotation marks omitted). The appropriate test for this prejudice is whether there is a reasonable probability that, but for counsel's error, there would have been a different result. *United States v. Quick*, 59 M.J. 383, 387 (C.A.A.F. 2004).

Here, the appellant has not met his burden of demonstrating his trial defense counsel was ineffective.

First, the appellant asserts that his addiction began after he was prescribed otherwise-unidentified pain pills by a military sports medicine clinic in order to treat pain from a broken rib. After that prescription expired, the appellant began using unprescribed Oxycodone, acquired for several months through a friend. After this illicit source was no longer available, the appellant moved on to heroin.

Neither the original use of the legal pain medication nor the apparently illegal use of unprescribed Oxycodone was introduced into evidence for consideration by the military judge. Likewise, the defense did not request expert assistance or introduce expert testimony discussing the relationship of prescription medications to heroin addiction. However, the military judge was aware that the appellant was addicted to heroin and had been taking steps to overcome his addiction in preparation for life outside of confinement.

Regardless, the decision to forgo potentially mitigating evidence—that he began the path towards opioid addiction through legal means—in an effort to avoid additional aggravating evidence—that his addiction took root through personal, and potentially illegal, efforts—seems inherently reasonable. Further highlighting his uncharged misconduct through expert testimony and cross-examination would seem to exacerbate its potential harm. As a result, the appellant has failed to demonstrate why this strategic decision was objectively unreasonable.

Second, the appellant proffers insufficient information as to the expected testimony of the seven victims not already before the court. Each of the victims provided a written statement in aggravation describing the amount of money the appellant borrowed and its impact on him or her. However, prior to sentencing, the military judge was also made aware that the appellant was required to repay each of those loans prior to the court-martial as part of his PTA. Now, the appellant proffers only that the Marines may have been able to testify regarding his military character or general good character. He does so without additional, amplifying information and does not provide specificity as to what the witnesses would have said if called to testify. Simply put, the appellant has not demonstrated prejudice as required by *Strickland,* and therefore does not provide a basis upon which we can grant relief. *United States v. Perez*, 64 M.J. 239, 244 (C.A.A.F. 2006).

Third, while the appellant avers that the length of his counsel's sentencing argument is evidence of incompetence, this assertion is inapt. The time spent arguing a point is not the measure of an advocate's effectiveness, let alone the test for deficient performance. Here, trial defense counsel effectively established the theme of his sentencing case—rehabilitation from drug addiction and the continuing support of the appellant's family—through the defense exhibits, the testimony of family members, and the appellant's own statement. He then capitalized on that theme through a brief but direct plea for time served. From the record before us, we find no cause to question the effectiveness of that strategy in sentencing.

Fourth, the National Defense Authorization Act for Fiscal Year 2014[10] significantly limited the CA's authority under Article 60, UCMJ, to affect findings and sentences for all but the most minor offenses committed on or after 24 June 2014, including cases when the adjudged sentence includes confinement for more than six months or a punitive discharge. Art. 60(c)(3)(D), UCMJ. As a result of these changes, the CA here was prohibited from granting most forms of relief that the appellant may have previously requested. The CA could not disapprove the findings and his discretion to modify the adjudged sentence was limited largely to action on the appellant's reduction in pay grade (from paygrade E-2 to E-1) or deferral and waiver of automatic forfeitures or reduction. Given these meager choices, a request for "any clemency available" was reasonable.

For these reasons, we find trial defense counsel's performance was not deficient, did not result in prejudice to the appellant, and did not fall "below

---

[10] Pub. L. No. 113-66, 127 Stat. 672 (2013).

an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688.

## C. Sentence appropriateness

The appellant also asserts that his sentence to a bad-conduct discharge was inappropriately severe.

We review the record for sentence appropriateness *de novo. United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). "This requires individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. McDonald*, No. 201400357, 2016 CCA LEXIS 310, at *4, unpublished op. (N-M. Ct. Crim. App. 2016) (per curiam) (citations and internal quotation marks omitted). "While [a Court of Criminal Appeals] has the authority to disapprove part or all of the sentence findings," we may not engage in acts of clemency. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010).

While acknowledging the addiction at the heart of his deleterious conduct, it is also relevant that the appellant stoked that addiction on the backs of his fellow Marines. Under the circumstances of this case, we are convinced that justice was done, and that the appellant received the punishment he deserved. *Healy*, 26 M.J. at 395. Granting relief at this point would be to engage in clemency, a prerogative reserved for the CA, and we decline to do so.

## III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge CAMPBELL and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court